UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

DREYON WYNN,

    Plaintiff,                                         Case No. 17-cv-14196
                                                    Honorable Thomas L. Ludington

vs.

MID MICHIGAN COMMUNITY COLLEGE,

    Defendant.
_____/

## ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

On December 28, 2017, Plaintiff Dreyon Wynn filed a complaint against Mid-Michigan Community College (MMCC). ECF No. 1. Plaintiff, an African American male, applied for a position as Executive Director of Human Resources for MMCC. He contends that MMCC hired a less qualified Caucasian female for the position. Accordingly, Plaintiff asserts that Defendant discriminated against him based on his race in violation of the Fourteenth Amendment and 42 U.S.C. 1983 (Count I), and in violation of the Michigan Elliot Larson Civil Rights Act (Count II). After approximately eight months of discovery, Defendant moved for summary judgment on December 6, 2018. ECF No. 11. Plaintiff responded on December 27 and Defendant replied on January 10. ECF Nos. 14, 17.

**I**.

In November of 2015, MMCC posted a job ad for its next Executive Director of Human Resources. Mot. Ex. A, ECF No. 11-1. The minimum qualifications for the job included an advanced degree and three years of experience. *Id.* The posting also required applicants to submit a letter of interest, resume, application, three letters of recommendation, and academic

transcripts. *Id.* The job posting indicates that MMCC would consider applications until the position was filled. *Id.* There was no deadline listed to submit an application. An interview committee was formed consisting of Lillian Frick, Eric Chamberlain, Gail Crandell, Susan Call, and Maggie Magoon. Hammond Dep. at 6, 26, ECF No. 11-2. Tonya Clayton, executive assistant to MMCC President Christine Hammond, was responsible for application intake. *See* Frick Dep. at 6, ECF No. 11-3. She uploaded all the complete application packets into a google drive that the committee members could access. *Id.* The committee members then reviewed the applications uploaded by Ms. Clayton and determined who should be invited for an interview. Chamberlin Dep. at 13, ECF No. 11-4. The committee members' purpose was to provide feedback, though the ultimate hiring decision was left to Dr. Hammond, MMCC's President. *Id.* at 20.

On November 8, 2015, Lori Fassett (formerly Lori Wright), a Caucasian female, submitted her application packet to Ms. Clayton. Fassett Appl., ECF No. 11-8. Her application packet included all required materials. *Id.* She did not, however, have an advanced degree, though she noted she was currently working on one and was close to finishing. *Id.* MMCC received about 40 applications for the position. Hammond Dep. at 7. Three candidates were interviewed on November 10, 12, and 17, though the committee could not reach a consensus. Ms. Fassett was contacted on November 23 for an interview on December 3. ECF No. 11-10.

On December 1, 2015, two days before Ms. Fassett was scheduled to be on campus to interview for the position, Plaintiff submitted his application. ECF No. 11-11. He did not include letters of recommendation (as required by the posting) but indicated he would submit them within 24-48 hours. *Id.* Ultimately, he only submitted one of the three letters required. Ms. Clayton responded with the same boilerplate email sent to all applicants: "Thank you for your

application for the Executive Director of Human Resources Position at Mid-Michigan Community College. The hiring committee appreciates the time you have invested in this application." ECF No. 11-12/

The committee interviewed Ms. Fassett on December 3. They reached a consensus and hired Ms. Fassett. Her offer letter dated December 10 reflected that she had committed to finishing her master's degree by May 1, which would increase her base salary. Offer Letter, ECF No. 11-14. From the time Ms. Fassett was contacted for an interview on November 23, the committee did not consider additional applicants from the application pool and none of the committee members recalled ever seeing Plaintiff's name or application materials prior to this lawsuit being filed. Hammond Dep. at 13, 21; Chamberlin Dep. at 19-20; Crandell Dep. at 11; Call Dep. at 10; Magoon Dep. at 5.

**II**.

Defendant moves to dismiss under Federal Rule of Civil Procedure 12(c) or alternatively for summary judgment under rule 56.

**A.**

"The standard of review for a [motion for] judgment on the pleadings [under rule 12(c)] is the same as that for a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6)." *E.E.O.C. v. J.H. Routh Packing Co.*, 246 F.3d 850, 851 (6th Cir. 2001). Courts must view the pleadings in the light most favorable to the nonmoving party, accept the well-pled factual allegations as true, and determine whether the moving party is entitled to judgment as a matter of law. *Commercial Money Ctr., Inc. v. Illinois Union Ins. Co.*, 508 F.3d 327, 335 (6th Cir. 2007).

**B.**

By comparison, a motion for summary judgment should be granted if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the initial burden of identifying where to look in the record for evidence "which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

The burden then shifts to the opposing party who must identify specific facts showing "a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (citation omitted). "The party opposing summary judgment cannot rest on its pleading or allegations, to prevail, they must present material evidence in support of their allegations." *Leonard v. Robinson*, 477 F.3d 347 (6th Cir. 2007) (citing *Celotex Corp v. Catrett*, 477 U.S. 317 (1986)). The Court must view the evidence and draw all reasonable inferences in favor of the non-movant and determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251–52.

**C.**

In order to prevail on a claim of racial discrimination under either the Fourteenth Amendment's Equal Protection Clause or the ELCRA, Plaintiff must prove the same elements required to establish a disparate treatment claim under Title VII. *Perry v. McGinnis,* 209 F.3d 597, 601 (6th Cir. 2000). It is a necessity that Plaintiff prove "racially discriminatory intent or purpose." *City of Cuyahoga Falls, Ohio v. Buckeye Cmty. Hope Found.,* 538 U.S. 188, 194 (2003) (internal citations omitted); *Gutzwillerv. Fenik,* 860 F.2d 1317, 1325 (6th Cir.1988).

A plaintiff can establish a prima facie case of race discrimination by relying on direct or indirect evidence of discrimination. *Trans World Airlines, Inc. v. Thurston,* 469 U.S. 111, 121

(1985); *Blalock v. Metals Trades, Inc.*, 775 F.2d 703, 707 (6th Cir.1985). Where a Plaintiff relies on indirect evidence, the *McDonnell Douglas* burden shifting framework applies, and a Plaintiff must show 1) he was a member of a protected class, (2) he suffered an adverse employment action, (3) he was qualified for the position, and (4) that adverse employment action occurred under circumstances giving rise to an inference of discrimination. *In re Rodriguez*, 487 F.3d 1001, 1008 (6th Cir. 2007) (citing *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802 (1972). The fourth element of the prima facie case can be established by showing that the plaintiff was replaced by a person outside his protected class or was treated differently than a similarly situated person of a different class for the same or similar conduct. *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 582–83 (6th Cir. 1992).

If the plaintiff succeeds in establishing a prima facie case, the burden then shifts to the employer to articulate a legitimate, nondiscriminatory rationale for the adverse employment action. *In re Rodriguez*, 487 F.3d at 1008. Once the employer does so, the burden shifts back to the plaintiff to demonstrate that the articulated reason is a mere pretext for discrimination.

**III**.

**A.**

Defendant's one paragraph argument under rule 12(c) is not adequately developed. Defendant argues Plaintiff has not sufficiently alleged that he and Ms. Fassett are similarly situated in all respects. Yet Defendant cites no cases addressing the sufficiency of the allegations in a race discrimination case. Indeed, the only citation offered is to *Iqbal* for the generally applicable plausibility standard. The motion will not be addressed on the merits as the 12(c) argument has been waived. *See United States v. Fowler*, 819 F.3d 298, 309 (6th Cir. 2016) ("Issues adverted to in a perfunctory manner, unaccompanied by some effort at developing

argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in [a] skeletal way, leaving the court to put flesh on its bones.").

## B.

### i.

Turning to the rule 56 motion, it is undisputed that Plaintiff can establish the first three elements of his prima facie case for race discrimination (that he was a member of a protected class, subject to an adverse employment decision, and was qualified for the position). Mot. at 11. The parties dispute whether he can meet the fourth element, namely whether the adverse employment decision occurred under circumstances giving rise to an inference of race discrimination. A plaintiff can demonstrate the fourth element by showing he was treated differently than a similarly situated person of a different class for the same or similar conduct. *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 582–83 (6th Cir. 1992).

Defendant argues that Plaintiff was not similarly situated to Ms. Fassett because his application was incomplete and was submitted after hers. As Plaintiff emphasizes, Defendant's discussion here obfuscates the inquiry at the prima facie case stage. This is not the point at which Defendant is to proffer its justification for the disparate treatment. The logic underlying the applicable legal standard is apparent after a full reading of Defendant's motion. Having already proffered its two justifications for the disparate treatment at stage one (timing and completeness of the applications) Defendant proceeds to analyze stages two and three of the burden shifting framework by simply repeating the same two justifications offered at stage one. If stages two and three of the *McDonnell-Douglas* framework are to serve any purpose, surely that purpose is not to simply repeat the reasoning discussed at stage one.

Defendant cites *Mitchell* for the proposition that a plaintiff must show that he and his comparators were similarly situated in "all respects". *Id.* The Sixth Circuit has cautioned, however, that "[a]lthough this statement appears to invite a comparison between the employment status of the plaintiff and other employees in every single aspect of their employment, *Mitchell* has not been so narrowly construed. In *Pierce v. Commonwealth Life Ins. Co.,* 40 F.3d 796 (6th Cir.1994), this court explained that the plaintiff was simply 'required to prove that all of the *relevant* aspects of his employment situation were 'nearly identical' to those of [the non-minority's] employment situation.'" *See Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 352 (6th Cir. 1998).

Defendant relies on additional language from *Mitchell* which, admittedly, is not entirely clear. *See Mitchell*, 964 F.2d at 583 (noting that to be similarly situated the Plaintiff and the comparator "must have dealt with the same supervisor, have been subject to the same standards *and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it*.") (emphasis added). But it is not accurate to read this language to suggest that stage one is the point at which the proffered reasons behind the disparate treatment are to be considered. Rather, stages two and three of the burden shifting framework require specific attention to the proffered justifications. Stage one simply asks whether there is a legally significant comparison to make in the first instance. The burden at this stage is not intended to be onerous. *Provenzano v. LCI Holdings, Inc.*, 663 F.3d 806, 814 (6th Cir. 2011).

For a plaintiff to be "similarly situated" means different things in different contexts. In the context of a failure to hire claim or a failure to promote claim, as compared to a wrongful termination claim, the "similarly situated" inquiry asks little more than whether the plaintiff and

the comparator applied for the same job and had similar qualifications. *See Provenzano v. LCI Holdings, Inc.*, 663 F.3d 806, 814 (6th Cir. 2011); *Tartt v. Wilson Cty., Tenn.*, 982 F. Supp. 2d 810, 817 (M.D. Tenn. 2013), *aff'd sub nom. Tartt v. Wilson Cty., Tennessee*, 592 F. App'x 441 (6th Cir. 2014).

Here, Plaintiff and Ms. Fassett applied for the same job (and thus "dealt with the same supervisor" and were held to the "same standards") and had similar qualifications. Thus, they were similarly situated. Plaintiff has met its prima facie case at the summary judgment stage.[1]

### ii.

Once the plaintiff meets its prima facie case, the burden shifts to the defendant to identify a legitimate, non-discriminatory reason for the decision. *In re Rodriguez*, 487 F.3d at 1008. Here, Defendant explains that 1) Plaintiff's application was incomplete in that he was missing his letters of recommendation (Mot. Ex. D at 13, Ex. E at 4, Ex. F at 4-5); 2) that his application was never forwarded to the hiring committee do to its incompleteness (*Id.*), 3) that his application was not received until two days prior to Ms. Fassett's interview (Mot. Ex. L); and 4) that the committee never went back to the applicant pool after Ms. Fassett's interview and none of the committee members recall seeing Plaintiff's name or application prior to this lawsuit (Mot. Ex. B at 13, 21, Ex. D at 19-20, Ex. E at 11, Ex. F at 10, Ex. G at 5). These facts are not in dispute.

### iii.

Once the employer articulates a legitimate, non-discriminatory reason for the decision, the burden shifts back to the plaintiff to demonstrate that the articulated reason is a mere pretext

---

[1] Even if Defendant's explanation was relevant to the prima facie case stage, their arguments are not well taken. Plaintiff and Ms. Fassett both failed to meet the explicit requirements of the job posting. In that sense, they are similarly situated. They also both submitted timely applications. The job posting indicated that applications would be considered until the position was filled. At the time he applied, the job had not yet been filled. That Plaintiff's application was later than Ms. Fassett's does not mean they were not similarly situated.

for discrimination. *Id.* Plaintiff can demonstrate pretext in three ways: (1) by showing that the proffered reasons had no basis in fact; (2) that the proffered reasons did not actually motivate the adverse decisions; or (3) that the proffered reasons were insufficient to motivate the adverse decision. *Scuderi v. Monumental Life Ins. Co.*, 344 F. Supp. 2d 584, 595 (E.D. Mich. 2004).

First, Plaintiff argues that the proffered reasons have no basis in fact. Plaintiff has identified no material issue of fact on this point. Plaintiff largely questions the sufficiency of these reasons to motivate the decision, and whether they actually did motivate these decisions. Those arguments do not, however, address the *factual basis* for the decision. There is no dispute that his application was incomplete, was submitted two days before Ms. Fassett's interview, and that the committee never reviewed his application. Plaintiff contends that there is a dispute of fact as to whether the committee reviewed his application because he received emails from Ms. Clayton regarding his application. Neither the initial confirmation email nor rejection email indicated that the committee had considered his application. ECF Nos. 11-12, 11-15.

Plaintiff has, however, identified evidence that the proffered reasons did not actually motivate the decision or were insufficient to do so. As Plaintiff notes, Ms. Fassett did not meet the minimum qualifications for the job, as she did not have an advanced degree. Defendant makes much of the fact that Plaintiff submitted an "incomplete application packet" (he was missing his letters of recommendation), whereas Ms. Fassett submitted a complete application packet. Indeed, this fact is undisputed. It is also undisputed that Ms. Fassett did not have an advanced degree. ECF No. 11-1. Plaintiff did have an advanced degree. *See* ECF No. 11-11.

Defendant's attempts to distance itself from this fact are unpersuasive. Defendant states that "*Ideal* applicants would possess an advanced degree . . ." Mot. at. 1 (emphasis added). To the contrary, an advanced degree was not listed as an "ideal" characteristic. It was listed as a

requirement. ECF No. 11-1. A professional certification, by contrast, was an example of an ideal characteristic in that it was listed as "preferred but not required." *Id.* There was no such limiting language listed after the advanced degree requirement.

Defendant also states that Ms. Fassett was offered the position "with the condition she complete her master's degree by May 1, 2016." Not so. The offer letter states that "this offer is *contingent upon the satisfactory completion of a <u>Criminal Records Check</u> and a <u>pre-employment physical to include drug screening</u>* . . . you have committed to completion of your master's degree program by May 1, 2016. When we receive your official transcript of this achievement, your base salary will increase to $79,000 . . ." ECF No. 11-14. The only express conditions to beginning employment were a criminal records check and a pre-employment physical. Completing her master's degree was something that she had "committed" to doing, but it was not a condition of her employment. Rather, she would simply receive a raise after completing it. Moreover, even if successful completion of a master's degree by May 1, 2016 was understood to be a condition of *continued* employment after that date, it was not a condition of her *beginning* employment.

Defendant also notes that Ms. Fassett was only one semester short of her master's degree. Mot. at 3. However, one semester short does not a master's degree make.

Defendant explains repeatedly that the hiring committee never returned to the applicant pool after its decision to interview Ms. Fassett, and that they never saw Plaintiff's application. Defendant overlooks a key decision maker in the hiring process: Ms. Clayton. She conducted the initial screening of applications and only uploaded "complete" applications to the google drive for review by the committee. However, the evidence suggests that she may have selectively enforced the application requirements. Ms. Fassett's application was "complete" in the sense that

she uploaded all necessary documents (including letters of recommendation), but she nonetheless failed to satisfy the minimum requirements for the job, as she did not have an advanced degree. Yet her application was not screened out and was forwarded to the committee. Plaintiff's application did not fair so well.

Ms. Clayton did not work for a third-party recruiter or staffing company. She worked for MMCC. Thus, her decision to screen out certain applications and not others is a decision subject to scrutiny in a race discrimination suit against MMCC.[2] Defendant cannot focus exclusively on the committee's culpability (or lack thereof) while ignoring Ms. Clayton's role in the hiring process.

In addition to being incomplete, Defendant argues that Plaintiff's application was also "late." Not so. The job posting states that review of applications would continue until the position was filled. Although Defendant was very close to filling the position when Plaintiff applied, they had not yet filled the position.

Defendant's proffered reasons for its decision are far from unreasonable and may persuade the ultimate fact finder. The facts here, however, preclude summary judgment. Plaintiff has identified sufficient evidence to establish a genuine dispute of fact as to whether the proffered reasons for the decision were a pretext for racial discrimination.

---

[2] It is quite common for an employer to have administrative employees conduct a first-level review of applications and submit a short list to the decision maker for review. If a first-level reviewer screened out all minority applicants, it would be strange indeed if the employer could absolve itself of liability simply by claiming that the ultimate decision maker never saw any minority applicants.

## IV.

Accordingly, it is **ORDERED** that the motion for summary judgment, ECF No. 11, is **DENIED**.

s/Thomas L. Ludington  
THOMAS L. LUDINGTON  
United States District Judge

Dated: February 1, 2019